CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 15 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CLINTON WAYNE BURKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:10-cv-00312 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| PEPSI BOTTLING COMPANY, ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | Chief United States District Judge |

Clinton W. Burks ("Burks" or the "plaintiff"), proceeding pro se, filed this action against his former employer, Pepsi Bottling Group, LLC ("Pepsi" or the "defendant"),[1] alleging that Pepsi violated Title VII of the 1964 Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"), and committed various state law torts in connection with the termination of Burks' employment. This case is now before the court on the defendant's motion to dismiss, or in the alternative, to grant summary judgment. For the reasons set forth below, the defendant's motion will be granted.

I.  **Factual and Procedural Background**

For purposes of summary judgment, the facts are presented in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

In April 2004, Burks was hired as a third shift machine operator by Pepsi. Almost three years later, a new Production Manager, Nakia Moore, came aboard, starting in January 2007. As part of the transition to her new position, Moore met with each worker on the third shift, including Burks. During their meeting, Burks informed Moore that he "had workplace

---

[1] Burks' complaint erroneously identified the defendant as "Pepsi Bottling Company."

accommodations under the ADA" and also had a serious health condition for the purposes of the FMLA. (Compl. at 2.)

In late January 2007, Moore informed Burks that the Human Resources Department had no record of his having received FMLA or workplace accommodations under the ADA. Because Burks had previously been off work several times for medical reasons, he requested and received a meeting with Joe Mackey, the Plant Manager, to discuss "how the HR Dept. could misplace my paper work." (Compl. at 2.) During this meeting, Burks gave Mackey a "new copy of my FMLA and work place accom[mo]dations signed by Dr. Henderson, D.O." (Compl. at 2.) Dated March 22, 2007, the FMLA form certified that Burks had a "serious health condition" due to his diabetes, hypertension, and osteoarthritis. (Pl. Resp. Ex. 8). Dr. Henderson also requested that Burks be given a variety of workplace accommodations, including storage for insulin, an area to test blood sugar levels, and frequent rest and food breaks. (Pl. Resp. Ex. 9.) Mackey said that he would look into the matter and asked if Burks' health was failing.

Shortly after his meeting with Mackey, Burks began being written up "almost weekly" for errors he committed while completing his production paperwork. (Compl. at 2.) Moore, his new supervisor, wrote him up a total of four times between January and March of 2007. (Def. Br. Ex. 1 at 4.) Prior to his meeting with Mackey, Burks had never been written up before. Nor had he changed positions or responsibilities; he was still working on the production line as a "Bottle Filler Orp." (Compl. at 2.) Moreover, he was still "doing the paper work the same as [he] was shown and had done so for several years." (Compl. at 3.) Thinking that the newly-noticed errors were the result of a medical condition, Burks took two weeks of FMLA leave to consult his family practitioner and a neurologist.

2

Burks returned to work on April 18, 2007 and worked the 9:00 p.m. to 5:30 a.m. shift. Mackey was in the filling room at the start of Burks' shift and "watched [Burks] very closely" from 9:00 p.m. to 10:20 p.m. At 10:35 p.m., Mark Waldeck, the Plant Product Availability Manager, came into the filling room, spoke briefly with the lab technician, and then left. When Burks asked the lab technician what Waldeck wanted, the lab technician told Burks that Waldeck wanted to know the name of the Filler Orp.—i.e., Burks. The remainder of Burks' shift passed without incident.

When Burks arrived for work the next day, however, he was immediately ushered into a meeting with Mackey and the human resources manager. Burks was told that, on April 18, Waldeck had been driving on the road just outside of the Pepsi plant at about 10:35 p.m.[2] and saw a man urinating between two bushes inside the Pepsi fence, facing the road. Waldeck stopped his car and "got a good ten second look at the individual's face before that person turned away and began walking back to the Pepsi facility." (Compl. at 3.) Waldeck described the individual as a white male of medium build wearing a hair net, a baseball cap, a dark vest, and pants. Waldeck then went to the plant and began walking around the facility in search of the man he had just seen. "[A]bout ten minutes later," Waldeck saw Burks and discovered his name from the lab technician. Waldeck walked around to other areas of the facility to see if anyone else would fit the description of the man he had seen between the bushes, but Burks was the only one who fit the description.

Burks contended that he had not urinated outside on April 18 and claimed that several

---

[2] Burks' complaint states the time of this incident as "sometime around 2035." (Compl. at 2). Other documents, however, indicate that the incident occurred at about 10:35 p.m. See Pl. Resp. Ex. 4 at 2, Ex. 10.

3

other production workers wore similar black vests, baseball caps, and hair nets. Despite his claim of innocence, Burks was placed on suspension pending further investigation. On April 25, 2007, he was formally discharged for violating the Pepsi code of conduct on the basis of public urination.

The precise administrative remedies that Burks pursued at this point remain unclear.[3] Subsequently, however, Burks filed suit in this court on June 9, 2010, alleging that the production paperwork write-ups and urination incident were shams used to disguise Pepsi's true desire to fire Burks because he sought benefits under the FMLA and accommodations under the ADA. Burks specified that he sought recovery under theories of "wrongfull [sic] termination, libel, slander, defamation, intentional infliction of emotional distress, Age Discrimination in Employment ADEA [sic], the Americans with Dis[a]bilities Act ADA [sic], Title VII of the Civil Rights Act of 1964."

On August 16, 2010, Pepsi filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for summary judgment under Federal Rule of Civil Procedure 56. On August 20, Burks filed a Second Motion to Amend his Petition, which the court construed as responsive to Pepsi's motion. After argument on the motion, the case was submitted to the court.

## II. Discussion

A Rule 12(b)(6) motion to dismiss must be treated as a motion for summary judgment "where materials outside the pleadings are presented to and not excluded by the court." FED. R.

---

[3]The timing and nature of the administrative proceedings pursued by Burks is dealt with in further detail in Part III.A.

4

CIV. P. 12(d). In this case, Pepsi argues that Burks' ADA, ADEA, and Title VII claims are untimely or unexhausted, relying on two attachments to its motion: a right-to-sue letter and a charge of discrimination before the Virginia Council on Human Rights that each relate to Burks' EEOC proceedings. See Def. Br. Ex. 1. In his response to Pepsi's motion, Burks does not dispute the authenticity of these extrinsic documents but has instead submitted twelve exhibits of his own.[4] The court will therefore consider the documents submitted by both parties in its assessment of Pepsi's timeliness argument.

Because this determination will consider the extrinsic documents submitted by the parties, the court will treat Pepsi's motion to dismiss as a motion for summary judgment with respect to this issue. See Ford v. Advanced Mktg. Servs., 2000 WL 19192, at *1 (4th Cir. 2000) (holding that the district court "effectively convert[ed] the motion to dismiss to a motion for summary judgment" by comparing two EEOC charges of discrimination); Rohan v. Networks Presentation LLC, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment in an employment discrimination case, since the court was considering such extrinsic documents as the charge of discrimination filed with the EEOC). Cf. Pueschel v. United States, 369 F.3d 345, 354 n. 3 (4th Cir. 2004) (observing that the district court need not convert a motion to dismiss if it does not consider extrinsic material that is attached to a party's motion); Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n. 7 (4th Cir. 1988) (noting that district court's reliance on exhibits to motion to dismiss did not convert the motion into one for summary judgment because "the facts to which the court so referred were either alleged in the

---

[4]Burks also received notice that any motion to dismiss may be converted to a motion for summary judgment "if documents or affidavits outside the pleadings are submitted by either party." See Dkt. No. 11.

amended complaint or contained in the exhibits thereto"). Because these extrinsic documents relate solely to the issues of timeliness and exhaustion of Burks' federal discrimination claims, the court will treat Pepsi's Rule 12(b)(6) motion as a motion for summary judgment only as to these issues; Burks' remaining claims will be considered under Rule 12(b)(6). See Arencibia v. 2401 Restaurant Corp., 699 F. Supp. 2d 318, 326 (D. D.C. 2010) (converting to a motion for summary judgment only one part of defendant's motion to dismiss an employment discrimination case); Green v. Potter, 687 F. Supp. 2d 502, 517 (D. N.J. 2009) (same); Rohan, 175 F. Supp. 2d at 809.

In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, 763 F.2d at 610. For a party's evidence to raise a genuine issue of material fact that avoids summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A. Federal Discrimination Claims

Pepsi argues that Burks has neither timely filed nor exhausted his administrative remedies with respect to his claims of discrimination under Title VII, the ADA, and the ADEA. In Virginia, a charge of discrimination under Title VII must be filed with the EEOC within 300 days

after the discriminatory act occurs. See 42 U.S.C. § 2000e-5(e)(1); Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002). See also E.E.O.C. v. Commercial Office Products Co., 486 U.S. 107, 122 (1988) (holding that the 300-day period applies even where the plaintiff did not timely file a charge in the state deferral agency). The same limitation periods apply to ADEA claims. See 29 U.S.C. § 626(d); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). They also apply to ADA claims. See 42 U.S.C. § 12117(a); McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994).

"[T]he time for filing a charge of employment discrimination with the EEOC . . . begins when the discriminatory act occurs." Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 621 (2007). Burks was terminated on April 25, 2007. He therefore had until February 19, 2008 to file his claim with the EEOC.

From the sparse documents provided by Burks to the court, it is difficult to unravel the precise timeline of any administrative proceedings subsequent to his termination. On December 31, 2007, Burks appears to have filed Complaint No. C080015 with the Office of Federal Contract Compliance Programs ("OFCCP"), alleging a violation of the Rehabiliation Act of 1973 and the Vietnam Era Veterans' Readjustment Assistance Act of 1974. (Pl. Resp. Ex. 3.) Because the OFCCP believed Burks' complaint to also allege violations of the ADA and the ADEA, the OFCCP forwarded it to the EEOC on January 11, 2008. (Pl. Resp. Ex. 1.) Burks therefore claims that he timely filed a charge of discrimination with the EEOC.

Pepsi, however, observes that Burks actually filed his complaint with a different agency altogether, and that this complaint ended up with the EEOC only by virtue of administrative congeniality rather than through any effort on the part of Burks. Moreover, Pepsi points out that

7

the right-to-sue letter attached to Burks' complaint in the instant case was issued on May 3, 2010, in reference to Charge No. 438-2008-00392. (Compl. Ex. 1.) There is no internal indication that the EEOC's Charge No. 438-2008-00392 is linked to the OFCCP's Complaint No. C080015; in fact, the former refers only to an alleged violation of the ADA without making any mention of a claim under the ADEA, while the latter cites claims under both statutes.

Moreover, it appears from the face of the Charge of Discrimination form associated with Charge No. 438-2008-00392 that Burks filed this charge with the Virginia Council on Human Rights only on February 23, 2010—more than two years and nine months after his termination, or 735 days too late. (Def. Br. Ex. 1 at 4.) Clearly, therefore, if the two sets of documents are not linked, Burks did not timely file his complaint with the EEOC, and his federal discrimination claims must be dismissed.

Unfortunately, Burks has not provided the court with any evidence that suggests that his charge of discrimination was timely filed with the EEOC. At oral argument, Burks explained that it took the EEOC three years to process the complaint that he had originally filed in December 2007, and that he had to request the intervention of his Congressman in order for the EEOC to proceed with his charge. After informing Burks that it needed a copy of the complaint he had originally filed in December 2007 in order to resolve this issue, the court entered an order on October 5, 2010, giving Burks seven days to submit additional documents to the court. The order expressly stated that "[s]pecifically, it is understood that the plaintiff intends to submit the complaint that he allegedly submitted to the EEOC in 2007."

Burks did not do so. The court still has not received a copy of Burks' 2007 charge. Instead, Burks responded to the court's order by submitting copies of his correspondence with

Congressman Rick Boucher and the EEOC. See Dkt. No. 19. According to this correspondence, the EEOC received Burks' complaint from the OFCCP on January 22, 2008. Id. at 3. As the EEOC explained on November 10, 2009, however,

> The information provided from the Department of Justice [sic] was insufficient to formalize a charge of discrimination. Therefore, the investigator assigned to conduct the intake attempted to contact Mr. Burks by phone at the number he provided. The investigator called Mr. Burks on April 3, 2008 and April 9, 2008. On both occasions, the investigator received a recorded message that Mr. Burks' telephone number was not in service. Due to our inability to contact Mr. Burks, the charge of discrimination was not formalized.

Id. at 3.

Most importantly, none of the materials submitted by Burks in response to the court's October 5 order detail precisely which charges of discrimination he presented to the EEOC in December, 2007. It indeed appears from the EEOC's account that Burks failed to properly present any charges to that agency within the requisite time frame. On February 12, 2010, the EEOC still had not received a properly-filed charge from Burks: "Due to the limited information provided, we are unable to determine if Mr. Burke [sic] has a basis for a charge of discrimination under the statutes we enforce. If Mr. Burke [sic] provides sufficient information to establish a basis under the statutes, we will formalize the charge of discrimination." (Dkt. No. 19 at 7.) Certainly, it appears that Burks filed an ADA charge on February 23, 2010. (Def. Br. Ex. 1 at 4.) But, as already indicated, this filing cannot stand on its own, as it was 735 days too late.

At the very least, without the original charge that Burks filed in December, 2007, the court has no way of determining which of Burks' claims, if any, were timely presented to the EEOC. Because Burks has not shown that he timely filed his ADA, ADEA, or Title VII claims, they must be dismissed. See United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847

(4th Cir. 1979) ("[A] plaintiff in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue."). See also Jones, 551 F.3d at 300-01 (noting that a plaintiff's failure to exhaust administrative remedies deprives the district court of subject matter jurisdiction over the claims); Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.1995) (If "the claims raised . . . exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."); Berry v. General Elec. Corp., 2008 WL 2726959, at *2 (W.D. Va. 2008) (Conrad, J.) ("Before a plaintiff can bring an action under Title VII, the ADA, or the ADEA, the plaintiff must first exhaust his administrative remedies by filing an administrative charge with the Equal Employment Opportunity Commission.").

    B.    <u>State Law Claims</u>

Pepsi moves to dismiss Burks' remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and assume its factual allegations to be true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992). Further, a pro se party's pleadings must be construed liberally. See Haines v. Kerner, 404 U.S. 519 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151-1152 (4th Cir. 1978). Still, to survive a Rule 12(b)(6) motion, a plaintiff must allege facts showing a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

    1.    *Defamation / Libel / Slander*

Burks first asserts claims of "libel, slander, [and] defamation" against Pepsi. "Unlike other jurisdictions, Virginia makes no distinction between slander (spoken words) and libel (written words) in actions for common law defamation." Eslami v. Global One Communs., Inc., 48 Va. Cir. 17, 21 (Va. Cir. Ct. 1999) (citing Fleming v. Moore, 221 Va. 884, 275 S.E.2d 632 (Va. 1981)). A plaintiff states a claim for defamation under Virginia law only by alleging "(1) publication of (2) an actionable statement with (3) the requisite intent." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). A statement is actionable if it is both false and "tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. (citing the Restatement (Second) of Torts § 559).

The court notes that Burks has not alleged who made a defamatory statement, to whom it was made, or even what the statement was. But in any event, the statute of limitations bars Burks' defamation claim. In Virginia, the limitations period for defamation actions is one year. VA. CODE § 8.01-247.1; Bass v. E.I. DuPont de Nemours & Co., 28 Fed. App'x 201, 205-06 (4th Cir. 2002). Even under a liberal construction, Burks' complaint alleges only that any defamatory statement was made on or prior to his last day of employment at Pepsi; namely, April 25, 2007. The statute of limitations on his claim would accordingly run on April 25, 2008. Because this suit was not filed until June 9, 2010, his claim is time-barred.

Burks has not argued that the statute of limitations as to his related state law claims should be equitably tolled while his claim was pending before the EEOC. But such an argument would not aid Burks even if he had made it, because "tolling has been held not to apply in situations where a plaintiff pursues parallel avenues of relief." Kolomick v. United Steelworkers

of America, Dist. 8, AFL-CIO, 762 F.2d 354, 356 (4th Cir. 1985) (refusing to toll a statute of limitations on the basis that the plaintiff had filed a charge with the National Labor Relations Board). Therefore, the mere filing of an EEOC charge does not equitably toll the statute of limitations as to related state law claims. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465-66 (1975) (holding that filing an EEOC charge does not toll the statute of limitations as to a § 1981 cause of action arising from same events); Ashjari v. Nynex Corp., 182 F.3d 898, 1999 WL 464977, at *2 (2d Cir. 1999) (applying Johnson to state law claims); Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322-23 (7th Cir. 1992) (same). See also Nealon v. Stone, 958 F.2d 584, 593 (4th Cir. 1992) (holding that pending EEOC determinations tolled a statute of limitations, but noting that "it is not the mere filing of a claim that we hold equitably tolls the statute, but rather an apparently favorable agency decision."). Accordingly, Burks' defamation claims must be dismissed.

### 2. *Intentional Infliction of Emotional Distress*

Burks also alleges that Pepsi has intentionally inflicted emotional distress upon him. To state a claim for intentional infliction of emotional distress under Virginia law, a plaintiff must allege that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). With respect to the second element of this tort, liability is imposed "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Burks has alleged only that Pepsi fired him for urinating in public to cover up its true

discriminatory purpose. But "in the great majority of cases, employment discrimination will not meet th[e] demanding standard" required to show outrageousness under Russo. Burke v. AT & T Technical Services Co., Inc., 55 F. Supp. 2d 432, 441 (E.D. Va. 1999) (holding that a demotion and termination allegedly based on racial discrimination, while "insidious and unacceptable," did not constitute outrageous conduct). See also Harris v. Norfolk and W. Ry. Co., 720 F. Supp. 567, 568 (W.D. Va. 1989) (Turk, J.) (holding that a demotion that was motivated by gender discrimination did not state a claim for intentional infliction of emotional distress). Moreover, Burks has not alleged any resulting emotional distress. See Russo, 400 S.E.2d at 163 ("[L]iability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.").

The court further notes that this claim is time-barred. In Virginia, the statute of limitations for claims based on intentional infliction of emotional distress is two years. VA. CODE § 8.01-243. Because the statute of limitations ran on Burks' claim on April 25, 2009—more than a year before this case was filed—Burks' suit was not timely. For each of these reasons, Burks' claim for intentional infliction of emotional distress must be dismissed.

## IV. Conclusion

For the foregoing reasons, the court will grant the motion filed by Pepsi.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the

accompanying order to the plaintiff and all counsel of record.

ENTER: This 15th day of October, 2010.

_____
Chief United States District Judge